## Stuart *et al. versus* The Second Presbyterian Church.

A verbal promise to pay a certain sum to reduce the debt of a church, on condition that "the whole amount be raised," is not binding unless this condition has been performed, and cannot therefore be enforced against the estate of the subscriber after his decease.

May 26th 1877.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Common Pleas of *Cumberland county:* Of May Term 1877, No. 176.

Case stated wherein the Second Presbyterian Church of Carlisle was plaintiff and Joseph A. Stuart and Abraham Bosler, executors of James Hamilton, deceased, were defendants.

The facts as stated were these :—

James Hamilton was a prominent communicant and member of the board of trustees of the Second Presbyterian Church of Carlisle, for forty years. He was one of its founders, and always took a deep interest in it. In the summer of 1870 the congregation of that church resolved to erect a new house of worship. It was completed in the early part of 1872, at an aggregate cost of about $45,000. To meet this expense three subscriptions were made by members of the congregation : one in 1870, one in 1871, and the other in 1872. In the first Mr. Hamilton gave $2000. On November 20th 1871, Mr. Hamilton made a will, in which he directed his executors to sell certain real estate in Carlisle, Pennsylvania, and to invest the proceeds of such sale in government bonds, or real estate security, and when the principal and interest amounted to a sum sufficient to pay off the indebtedness of the Second Presbyterian Church, with any other benefactions or contributions of others for the new church and lecture-room, to pay over the same to the trustees of said church. At that time the liabilities incurred by the church were about $24,000, and the real estate so devised was worth $7000.

The second subscription referred to was made in December 1871, after the making of said will. On December 17th 1871, Mr. Hamilton made his subscription in the following terms :—

[Stuart *v.* The Second Presbyterian Church.]

I am willing to subscribe on the terms stated, $500, and as soon as $10,000 are subscribed, $500 additional, and when the full amount of our indebtedness is subscribed, $1000 additional.

December 17th 1871.                          J. HAMILTON."

$10,000 were subscribed, and Mr. Hamilton gave the additional $500, which has been paid in full.   This subscription left the indebtedness of the church about $14,000.

On September 9th 1872, at a meeting of the congregation, the third subscription was made upon the following terms, viz.: "We the undersigned, do hereby severally promise to pay the amounts set opposite our respective names, for the purpose of paying off the entire indebtedness of the Second Presbyterian Church of Carlisle, Pa., exclusive of upholstering and organ funds, any surplus, however, to be applied to those purposes; this subscription being on condition that the whole amount be raised."

Mr. Hamilton on that day verbally subscribed $1000, upon these terms, and his name was accordingly entered upon the subscription book for that amount.

On the 11th September 1872 he wrote in that book the following offer, viz.: "If Mr. W. S. Woods will make his promised additional subscription $2000 in the terms stated in that paper, I will do the same.

September 11th 1872.           ·              J. HAMILTON."

Mr. Woods failed to agree.   The amount subscribed, including the $1000 of Mr. Hamilton, was about $7000, leaving a balance to raise, including the upholstering and organ funds, of about $7000. Mr. Hamilton regularly entered these subscriptions in his general account book, and the last mentioned subscription is there entered as follows, viz.: "4. Subscription contingent, $1000."

On January 10th 1873, Mr. Hamilton was asked to pay this subscription.   With a full knowledge of the condition of the church's affairs he promised to do so, if several other gentlemen would pay theirs.   One other gentleman on that day paid $1000, his subscription on the Hamilton promise.

On January 13th 1873, Mr. Hamilton made another will, in which he devised the same real estate devised by the will of November 20th 1871, to be sold by his executors, and the proceeds to be paid over to the trustees of said church, to pay off the church's indebtedness, and directed that the said trustees should invest the surplus after paying the indebtedness, and apply the interest to the renting of pews in the church for its poor.   Mr. Hamilton died on January 23d 1873.   By the codicil to the last will it was made conditional upon his living until March 1st 1873.   Having died before that time the courts decided that the will of 20th November 1871, was the operative disposition of his property in order to effectuate his intentions to preserve his charitable legacies.   Both these testamentary papers, with

the codicil, were proved and recorded in the register's office of Cumberland county. The devises therein referred to above are made part of this case, as if fully set forth. The said real estate has been sold for $7000. This sum, with the amount of the third subscription, including the one of Mr. Hamilton for $1000, is required to pay off the indebtedness of the church. The other subscribers have treated the requisite amount as raised by this legacy from Mr. Hamilton and have paid or agreed to pay their several subscriptions. The question for the court is, Are Mr. Hamilton's executors under these circumstances liable to pay the said sum of $1000 to the church, in addition to the proceeds of the real estate directed to be sold?

If the court should be of opinion that they are, then judgment to be entered in favor of the plaintiff for $1000; but if otherwise, then judgment to be entered for the defendants.

The court, McLean, P. J., entered judgment for the plaintiff for $1000 and costs and the defendants took this writ, assigning this entry for error

*J. H. Graham & Son,* for plaintiffs in error.—The promise to pay was conditional and as the condition was not complied with during the lifetime of Mr. Hamilton, the promise was revoked by his death and cannot be enforced against his executors: Helfenstein's Estate, 27 P. F. Smith 331; Phipps *v.* Jones, 8 Harris 263: Dodge *v.* Gardiner, 31 N. Y. 241.

To raise the whole amount of the church debt was a condition precedent and there could be no recovery until the condition was performed: Berry *v.* Yates, 24 Barb. 199; Sandford *v.* Handy, 25 Wend. 475; Stewart *v.* Trustees of Hamilton College, 2 Denio 403; Phila. & West Chester Railroad Co. *v.* Hickman, 4 Casey 318.

*John Hays,* for defendant in error.—The verbal subscription was supported by a sufficient consideration and is binding: Ryers *v.* Blossburg Congregation, 9 Casey 115; Caul *v.* Gibson, 3 Barr 417.

Mr. Justice PAXSON delivered the opinion of the court, June 11th 1877.

The subscription of Mr. Hamilton, made on the ninth day of June 1872 was conditional. The debt of the church at that time was about $14,000. Mr. Hamilton verbally subscribed $1000 on condition that "the whole amount be raised." It never was raised. On January 10th 1873 $7000 of the $14,000 had been subscribed. This included Mr. Hamilton's subscription. On that day he was asked to pay this $1000. He said he would do so "if several other gentlemen would pay theirs." One only of them paid. Thus the matter stood at the time of Mr. Hamilton's death. His executors

[Stuart v. The Second Presbyterian Church.]

are now called upon by the church to pay this subscription. The court below gave judgment against them upon the case stated. This was error. The subscription was not binding upon Mr. Hamilton during his lifetime; as we have before said it was conditional; the subsequent promise to pay was conditional; the condition had never been performed. It was *nudum pactum* and imposed no liability upon Mr. Hamilton's personal representatives after his death. It may be that he would have paid this $1000 had he lived. We are not to interpret this subscription by what he might have done had his life been spared; nor by what the members of the church may think he intended to do. We must look only at what he contracted to do. We find no binding contract to pay. We are dealing with the subscription of a dead man; one too who appears to have been very generous to this church in his lifetime, and gave it a munificent donation by his will. But the law in distributing his estate knows nothing of generosity. It merely protects and enforces the legal rights of parties. It is our duty to see that no injustice is done to Mr. Hamilton's estate. It was strongly urged upon the argument that the devise in Mr. Hamilton's will in favor of the church fulfilled the condition of the subscription and made his estate liable. We are unable to see the force of this suggestion. The subscription was to be good when the whole amount of the debt should be raised. Raised by whom? Not certainly by himself. He was willing to contribute $1000 if other parties would contribute the residue of the debt. This is what the subscription meant. We need not enlarge upon this point. It is too plain.

The judgment is reversed, and judgment is ordered to be entered in favor of the defendants upon the case stated, with costs.